# IN THE COURT OF APPEALS OF IOWA

No. 19-0466
Filed July 1, 2020

IN RE THE MARRIAGE OF BRIAN ANDREAS
AND ELLEN ROCKNE

Upon the Petition of
**BRIAN ANDREAS, n/k/a KAI ANDREAS SKYE,**
Petitioner-Appellant,

**And Concerning**
**ELLEN ROCKNE,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Winneshiek County, John J. Bauercamper, Judge.

Former husband appeals the property distribution provisions of the dissolution decree. **AFFIRMED.**

Thais Ann Folta and James Burns of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellant.

Allison M. Heffern of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**BOWER, Chief Judge.**

Brian Andreas, now known as Kai Andreas Skye, appeals the property distribution provisions of the decree dissolving his thirty-four year marriage with Ellen Rockne.

Skye and Rockne were married in 1984, separated in 2010, and—for about a decade—attempted to dissolve their marriage and their interwoven business dealings. The process was complicated by problems with the Internal Revenue Service (IRS).

Beginning in the 1990s, the couple produced and marketed Skye's copyrighted artwork via two business entities, StoryPeople, Inc. and StoryPeople Graphics (collectively "StoryPeople"). For many years, Skye licensed his artwork solely to StoryPeople, Inc., which sublicensed to StoryPeople Graphics for a ten percent royalty agreement. StoryPeople Graphics produced and marketed the artwork. Skye owned fifty-one percent and Rockne owned forty-nine percent of those two entities. Rockne was involved with the development of products and employed by the business. This arrangement appears to have been a profitable venture,[1] providing a very comfortable living for the couple and their two now-adult children.

However, a tax structure used by StoryPeople was rejected by the IRS in 2009 and Skye and Rockne were assessed tax liability for the tax years 2006, 2007, 2008, and 2009. Those unpaid liabilities increased over the next several years due to the addition of interest and penalties, reaching more than $1.5 million.

---

[1] Testimony at trial indicates that at one point the couple's financial portfolio was valued at about ten million dollars.

In 2015, Skye created Thousand Headed Man, LLC (THM), of which Skye is the sole owner. THM is described by Skye as a "pass-through" company, paying all of Skye's expenses, licensing Skye's work, and receiving royalties from various licensing agreements. While Skye was operating StoryPeople in 2015, Skye entered into new licensing agreements for his artwork via THM with Jumbo Doris, now known as Flying Edna.[2] Flying Edna is solely owned by Skye's paramour, Fia Jack Skye, formerly known as Wendy Saver. Flying Edna began to produce and market Skye's artwork and used StoryPeople's mailing lists to do so.

On March 22, 2016, Skye filed a dissolution petition seeking an equitable division of the parties' property and debts. In March 2016 and May 2017, the district court entered injunctive orders prohibiting the dissipation of marital assets.

The dissolution trial was held on January 16–17, 2019. Skye and Rockne testified about their marriage, their businesses, and other marital assets.

Skye testified that he was notified in 2009 about the taxes owed by StoryPeople for the years 2006–09. He acknowledged having sufficient resources to pay off the debt when they received the assessments. However, he entered into negotiations with the IRS. At one point the amount owed to the IRS had reached $1.689 million but, using StoryPeople assets, the amount had been paid down to $1.1 million.

Skye testified after September 2012, he no longer licensed his work solely to StoryPeople. At the time of trial, StoryPeople, Inc. had no more royalties coming to it and was operating at a loss. The StoryPeople entities had interest in two

---

[2] Under those agreements, Flying Edna pays a larger licensing fee to Skye than the royalty previously paid by StoryPeople.

trusts, which in turn owned four buildings in Decorah, Iowa. Other than the buildings, StoryPeople had few other assets.

Skye's suggested property division was that he receive all the copyrights to his artwork. He asked the court to order the two trusts be dissolved and the assets returned to the donor, StoryPeople, Inc. He also asked that the court order the sale of one building with the proceeds being remitted to the IRS and suggested Rockne receive the other three buildings. Finally, he suggested the IRS liability be divided equally between him and Rockne.

Rockne testified the last time she worked outside the family business was in 1991. After 1991, she was actively involved in the development, marketing, and sale of products created from Skye's artwork until Skye asked her to step aside in 2015. She asked the court to award her the pre-2012 copyrights and the StoryPeople entities and to place the IRS obligation with Skye.

The district court made the following findings of fact:

> Following their separation and disputes with the IRS, the parties have had a difficult relationship.
> Since the 2016 and 2017 injunctions were issued, the marital companies have suffered significant declines in value as summarized below:
> (1) Companies values have declined to 1/3 of their former worth.
> (2) Substantial royalties have been improperly diverted to his girlfriend's company.
> (3) Sales have been dropping and royalty payments have been increasing.
> (4) The value of the product brand has been diluted.
> On December 27, 2018, the court filed an order following a contempt hearing finding that [Skye] has failed to fully comply with the requirements of these orders by:
> (1) Failing to provide all monthly balance sheets and income & expense statements for [THM].

(2) Failing to manage StoryPeople Inc., StoryPeople Graphics Inc., and [THM] in a way designed to increase the value and income of the businesses.

(3) Entering into contractual arrangements with his girlfriend's company Jumbo Doris, LLC designed to shift income from the marital companies to her solely owned firm without full compensation by cash or services.

(4) Hiring of his girlfriend as an employee of StoryPeople Graphics to divert funds from the marital companies.

At trial, [Skye] again failed to adequately explain and justify his past transfers of assets and income to his long-time girlfriend and putative business partner.

His weak explanations and rationalizations regarding his possession of false passports and use of foreign bank & investment accounts reflects badly on his credibility and gives the court grave concern about what he might do to avoid compliance with any award to [Rockne].

[Skye]'s strategy of contesting the IRS levies for back taxes rather than paying them timely when adequate funds were available has resulted in escalating the amount payable to the IRS with additional penalties and interest.

. . . .

[Rockne] does not request an award of alimony, because she believes that [Skye] would refuse to pay it and he would frustrate any efforts by her to collect any alimony payments. The court agrees with her assessment.

[Skye] is no longer actively using the StoryPeople, Inc. and StoryPeople Graphics, Inc. companies to market his artwork, writings, and other products. He has also discontinued producing and licensing numerous prior products associated with StoryPeople. Instead, he is primarily using his company called [THM] and associating with his girlfriend in her companies, including Jumbo Doris. Additionally, he is also focusing on creating and promoting newer products rather than the traditional ones associated with StoryPeople.

[Rockne] seeks an award of the StoryPeople, Inc. and StoryPeople Graphics, Inc. companies, so that she may use their names together with the associated copyrights to provide employment and income for herself after the dissolution. The liquidation of many other marital assets is needed to satisfy the unpaid tax obligations to the IRS. In the past, [Rockne] has been actively involved in the marketing and business part of the businesses. She is satisfied that she can operate those companies well enough to support herself after the dissolution. [Rockne] no longer possesses any other current, marketable skills.

The court found the marital assets included the following:[3]

| ASSET DESCRIPTION | MARKET VALUE |
|---|---|
| StoryPeople Graphics, Inc. – corporate stock owned - 51% Kai & 49% Ellen | $ 14,000.00 |
| Corp. assets include = Swiss Life Annuity Value in 2015 at $170,000 | 170,000.00 |
| StoryPeople, Inc. – corporate stock owned – 51% Kai & 49% Ellen | 4,108.00 |
| Thousand Headed Man L.L.C. - corporate stock owned – 100% Kai | 48,035.00 |
| Tumblecloud, L.L.C. – corporate stock owned 100% StoryPeople, Inc. | unknown |
| Ligonberry L.L.C. – stock Ellen 100% | 1,761.00 |
| Hidden Falls L.L.C. – stock Ellen 100% | 5,000.00 |
| Andreas Prime Trust – owned by StoryPeople, Inc. | 733,428.00 |
| Trust Assets = Bldg 216 W. Water ST, Decorah IA value $235,000 | |
| Bldg 218 W. Water ST, Decorah IA value $220,000 | |
| Bldg 113 E. Water ST, Decorah IA value $375,000 – mortg $96,572 | |
| Bank account balance = unknown. Estimate as nominal | |
| Broadway Trust – owned by StoryPeople, Inc. | 255,000.00 |
| Trust Assets = Bldg 110 Winnebago ST, Decorah IA value $255,000 | |
| Copyrights - art, writings, sculptures, & all creative forms as registered to Kai | 40,000.00 |
| Unimproved land in Mexico – title jointly by Kai & Ellen | 10,000.00 |
| 2002 BMW automobile | 2,165.00 |
| 2008 Ford Edge SEL automobile | 5,374.00 |
| Checking & savings accounts in sole name of Kai | 19,463.00 |
| Checking & savings accounts in sole name of Ellen | 5,006.00 |
| Diamond ring | 1,000.00 |
| Household goods, furniture & appliances | Not valued |
| Personal art collection | Not valued |
| Lending Club account - Kai | 10,384.00 |
| Jackson Life Insurance Company – policy of life of Kai | 362,109.00 |
| New York Life Insurance Company – policy of life of Ellen | 92,010.00 |

The court found marital debts included $1,059,409.00 owed to the IRS; $273,958 Skye had borrowed on his life insurance policy; and $68,027 Rockne had borrowed on her life insurance policy.

Skye was awarded personal property, a vehicle, and bank accounts held in his name alone at the time of trial, his life insurance policy subject to loans thereon, foreign real estate, copyrights dated after 2012, and THM. The court ordered the Swiss Life annuity policy owned in the name of StoryPeople Graphics be liquidated "the net proceeds to be treated as a distribution to [Skye], with those net proceeds

---

[3] Via StoryPeople, Skye invested about four million dollars in Tumblecloud, L.L.C., listed in the table. Skye intended Tumblecloud to develop software. Skye testified it had no value.

being made payable to the [IRS] to be applied against the oldest tax liability." The court also ordered the Andreas Prime Trust and the Broadway Trust dissolved and their assets transferred to StoryPeople, Inc. It ordered the Winnebago and East Water Street buildings sold, the proceeds of which would be treated as a distribution to Skye and made payable to the IRS "to be applied against the oldest tax liability." The court also ordered Skye to be solely responsible for all remaining tax liabilities.

Rockne was awarded personal property, a vehicle, and bank accounts held in her name alone at the time of trial, her life insurance policy subject to loans thereon, all copyrights prior to 2012, StoryPeople, Inc., StoryPeople Graphics, Tumblecloud, Ligonberry LLC, and Hidden Falls LLC.

Skye appealed, asserting the trial court's division of assets and liabilities is inequitable. He contends the court's ruling improperly injects fault into its decree.

While the appeal was pending, Rockne sought a remand, asserting she had discovered an additional Swiss Life annuity policy and an additional tax since the decree was entered. We granted a remand for the district court to make findings and distributions of the additional asset and tax liability.

On March 31, 2020, the district court entered its ruling on remand, which provides in part:

> Evidence presented at the original trial disclosed that StoryPeople Graphics was the owner of an asset described as Swiss Life annuity valued in 2015 at $170,000 in U.S. funds. Prior to trial, that information had not fully been disclosed by [Skye].
> Until the court's dissolution decree awarded [StoryPeople Graphics] and its assets to respondent Rockne, [Skye] was in control of the company and its records. After the above described assets were awarded to respondent Rockne, she was able to obtain access to company records that disclosed the existence of a second,

valuable Swiss Annuity not previously disclosed to her or the court by [Skye]. Her attorney had to request the aid of the court to compel [Skye] to execute a power of attorney to obtain the cooperation of the annuity company in granting her information about its existence and value. [Skye's] remand hearing exhibit HHH dated February 10, 2020, discloses that the second annuity has a value based upon the Swiss franc of CHF 135,455.00. The annuity value varies with the respective exchange rates of the two nations' currencies, but it is apparently worth between $140,000 to $200,000 in U.S. dollars.

[Skye] denied any knowledge of this asset at the time of trial.

In addition to the annuity, a substantial old payroll tax debt to the [IRS] owed by the companies awarded to respondent Rockne was disclosed by [Skye] after the decree was filed. [Exhibit JJJ shows a liability of $17,562.66 plus interest and penalty.]

[Skye] claimed in testimony that he thought any dispute regarding this tax liability had been resolved long ago and this debt did not exist. No documentation was provided to support his testimony and apparently none is available to contest the claim. [Skye] asserts that this debt is [Rockne's] obligation now, because the companies were awarded to her.

The district court found Skye's testimony during the remand hearing "to be equally lacking in credibility as was his original testimony." The court continued:

The additional evidence of [Skye's] concealment of assets confirms the court's prior findings that any award of alimony, lump sum cash payment, or attorney fees, would likely be futile in view of [Skye's] conduct and lack of credibility. It further justifies the award of copyrights to [Rockne] as the only practical way to provide [Rockne] with the ability to obtain the benefit of any financial award in her favor.

The additional asset and additional debt discovered since trial must be considered valued as of the date of trial and then conformed with the court's dispositional rulings.

The court ordered the newly-discovered annuity policy liquidated and the proceeds divided equally between Skye and Rockne. The payroll tax debt of $17,562.66 plus interest and penalties was to be deducted from Skye's share and remitted to the IRS.

On our de novo review, we find no reason to amend the district court's decree or remand ruling because we find no "failure to do equity." *See In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).

Skye's cries of inequity fall flat under the circumstances. While Iowa is a no-fault divorce jurisdiction, *see id.* at 407, dissipation of marital assets is properly considered by the decretal court in distributing marital property. *In re Marriage of Fennelly*, 737 N.W.2d 97, 104–05 (Iowa 2007) ("In determining whether dissipation has occurred, courts must decide '(1) whether the alleged purpose of the expenditure is supported by the evidence, and if so, (2) whether that purpose amounts to dissipation under the circumstances.' . . . Courts may also consider '[w]hether the dissipating party intended to hide, deplete, or divert the marital asset.'" (citations omitted)).

Skye's testimony leaves no doubt he intended to deplete and did divert several hundred thousand dollars of marital assets.[4] He chose to enter licensing agreements with Jumbo Doris rather than StoryPeople. He chose not to pay the IRS debt after learning of it in 2009 even though the parties had sufficient funds to do so.[5] The parties separated in 2010 and the IRS liability has increased dramatically since then. It is not equitable to assign half of that remaining liability to Rockne. The court's division of the copyrighted materials allows Rockne to market products traditionally associated with StoryPeople. The court awarded

---

[4] Rockne testified the amount diverted totaled $694,517.69.
[5] Skye testified the tax liability was incurred because his father "decided not to" comply with the requirements needed for a particular tax structure.

Skye the copyrights to post-2012 art, which Skye testified were "more interesting to me, so I put more energy into them."

Rockne requests an award of appellate attorney fees and has submitted an affidavit in support. Appellate attorney fees are not awarded as a matter of right but rest within the court's discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). In considering appellate attorney fees, we look to "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). We award Rockne appellate attorney fees of $15,000.00 and assess costs of the appeal to Skye. We affirm the decision of the district court.

**AFFIRMED.**